UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HARRY C. BOYDE, JR.,

       Plaintiff,

v.

TROTT & TROTT, P.C., et al.,

       Defendants.
_____/

Civil Action No.
4:13-cv-10051

HON. MARK A. GOLDSMITH

## OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT TROTT & TROTT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 10)

### I. INTRODUCTION

In this foreclosure-related action, Plaintiff Harry C. Boyde, Jr. claims that the foreclosure counsel — Defendant Trott & Trott — acted wrongfully in handling the foreclosure, including making misrepresentations that the foreclosure sale would be suspended while a loan-modification request was under review. Trott & Trott filed a motion for summary judgment (Dkt. 10) and Plaintiff filed a response (Dkt. 12). For the reasons discussed below, the Court grants in part the motion for summary judgment, and dismisses without prejudice the claims against Trott & Trott.[1]

### II. BACKGROUND

On May 10, 2010, Plaintiff refinanced the existing mortgage on his property by executing a note and new mortgage with Defendant JPMorgan Chase Bank. Compl. ¶¶ 2, 17-18, Ex. A to Notice of Removal (Dkt. 1-1); Def. Br. at 1. Plaintiff claims the mortgage loan subsequently was

---

[1] Because Defendant Trott & Trott requested in its motion that the claims be dismissed with prejudice, but the Court dismisses them without prejudice, the Court grants the motion in part.

1

securitized, i.e., assigned either to (i) Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac") itself or (ii) Freddie Mac as trustee for a trust holding his mortgage; but Plaintiff alleges the assignment was never recorded. Id. at ¶ 19; see also 6/30/10 Correspondence (Dkt. 1-1, 42 of 67, CM/ECF pagination).

Plaintiff subsequently became delinquent in his payments. Notices of foreclosure were published in the newspaper and posted on the door of the property in fall 2011. Compl. ¶ 21; see also Affidavits of Publication and Posting (Dkt. 1-1, 24-26 of 67, CM/ECF pagination); Def. Br. at 2-4.

Plaintiff began working with agents of Trott & Trott to try to obtain a modification of his loan. Compl. ¶ 22-24; see also Correspondence, Exs. C and E to Def. Mot. for Summ. J. (Dkts. 10-4, 10-6); Def. Br. at 5. Throughout the next few months, Plaintiff continued to receive letters from Trott & Trott requesting information for a possible loan modification. See, e.g., 1/10/12 Correspondence (Dkt. 1-1, 22 of 67, CM/ECF pagination). The initial notices expressly warned Plaintiff in capital lettering that his "servicer will continue all foreclosure activity unless and until your loan is either brought current or you receive formal written notification that an alternative to foreclosure has been granted," and that "the servicer will continue all foreclosure activity unless and until one of the . . . mentioned alternatives to foreclosure has been completed." See 11/23/11 Correspondence and 11/28/11 Correspondence, Exs. E and F to Def. Mot. for Summ. J. (Dkts. 10-6, 10-7). Nevertheless, Plaintiff alleges that he was "assured by employees/agents of Defendant Trott & Trott that the foreclosure sale would be suspended while his loan modification application was pending." Compl. ¶ 25. Despite these alleged assurances, however, the property was sold at a sheriff's sale on January 12, 2012; Plaintiff claims he was

2

unaware of the sale at the time. Id. at ¶ 24; see also Sheriff's Deed, Ex. D to Def. Mot. for Summ. J. (Dkt. 10-5).

On March 28, 2012, Plaintiff received an e-mail from Michelle Moore, a Trott & Trott employee, stating that his request for a loan modification had been denied. Compl. ¶ 26; 3/28/12 E-mail (Dkt. 1-1, 55 of 67, CM/ECF pagination). Ms. Moore also informed Plaintiff that Trott & Trott was "moving forward with the foreclosure process," despite the fact that the sheriff's sale had already occurred. 3/28/12 E-mail.

In June 2012 — over two months after Ms. Moore's initial e-mail — Plaintiff e-mailed Ms. Moore to ask why his request for a loan modification had been denied. Id. Plaintiff alleges that he then learned that the property had been sold at a sheriff's sale on January 12, 2012. Compl. ¶ 27. Plaintiff's redemption period expired in July 2012. Def. Br. at 5.

Plaintiff subsequently filed the instant action on or around December 12, 2012 — five months after the end of the redemption period. See Compl. The complaint contains seven causes of action: (1) wrongful foreclosure; (2) fraudulent misrepresentation; (3) innocent misrepresentation; (4) exemplary damages; (5) "[q]uiet [t]itle Freddie Mac and Chase Bank"; (6) Defendants are not real parties in interest; and (7) conversion. Id. All of the claims concern purported issues with the mortgage assignment to Freddie Mac, except the claims of fraudulent misrepresentation, innocent misrepresentation, and exemplary damages; those claims concern Trott & Trott's purported representation that the foreclosure sale would not proceed while Plaintiff's request for a loan modification was under consideration.

The case was removed to this Court on January 7, 2013. Notice of Removal (Dkt. 1). Trott & Trott subsequently filed the instant "Motion for Summary Judgment/Dismissal." Def.

Mot. for Summ. J. (Dkt. 10). Plaintiff filed a response (Dkt. 12), and the Court heard oral argument on December 5, 2013.

### III. SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a defendant seeks summary judgment, the defendant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quotation marks omitted). "[A] plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment . . . as long as the plaintiff has had a full opportunity to conduct discovery." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

Where a plaintiff has not had the opportunity to conduct discovery, summary judgment may be granted if the plaintiff does not present an affidavit or declaration explaining that, "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); Gettings v. Building Laborers Local 310 Fringe Benefits Fund, 349 F.3d 300, 305 (6th Cir. 2003) (nonmoving party must file an affidavit that "indicates to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information" (brackets, quotation marks, and citations omitted)). In other words, "'[w]here a party opposing summary judgment and seeking a continuance pending completion of discovery fails to take advantage of the shelter provided by Rule 56[(d)] by filing an affidavit, there is no abuse of discretion in granting summary judgment if it is otherwise appropriate.'" Id. (quoting

4

Cacevic v. City of Hazel Park, 226 F.3d 483, 488 (6th Cir. 2000)). Plaintiff did not file such an affidavit or declaration in this case.

## IV. ANALYSIS

As discussed above, Plaintiff's complaint contains seven causes of action. See Compl. (Dkt. 1-1). Aside from the claim for quiet title — which is directed expressly against Defendants JPMorgan Chase Bank and Freddie Mac — Plaintiff's complaint does not specify which claims correspond to which Defendants. Nevertheless, Defendant Trott & Trott's motion addresses each of these claims, except the claim for quiet title. Therefore, the Court also will analyze each claim in turn.

### A. Wrongful Foreclosure

Plaintiff's first claim, for wrongful foreclosure, is based on what he contends was an unrecorded assignment. In particular, Plaintiff alleges that his loan was securitized, but that the corresponding assignment to Freddie Mac (or Freddie Mac as trustee) was never recorded. Compl. ¶ 19. Plaintiff claims that this alleged failure to record — and subsequent foreclosure — resulted in two violations of Michigan's foreclosure statutes: Mich. Comp. Laws § 600.3204(3) (failing to show a record chain of title given the unrecorded assignment) and Mich. Comp. Laws § 600.3212 (notices of foreclosure identified JPMorgan Chase Bank, rather than Freddie Mac, as the foreclosing mortgagee). Id. at ¶¶ 29-38.

The Court concludes that dismissal of this claim against Trott & Trott is appropriate because the claim does not meet the pleading requirements of Federal Rule of Civil Procedure 8 and the Supreme Court's decision in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[2] Rule 8

---

[2] Defendant Trott & Trott raises other arguments in support of dismissal, including that it cannot be liable to Plaintiff because it was acting as foreclosure counsel and Plaintiff was adverse to its client. Given that the Court concludes that Plaintiff failed to meet his pleading obligations, the

requires that a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In explaining this requirement, the Supreme Court in Iqbal noted that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not suffice. Iqbal, 556 U.S. at 678.

Here, Plaintiff does not specify whether and/or how Trott & Trott was involved in the alleged misconduct. Rather, Plaintiff broadly claims that "Defendants failed to show a record chain of title from Chase to Freddie Mac, Trustee," Compl. ¶ 30, and that "Defendants improperly identified the mortgagee as JPMorgan Chase Bank," id. at ¶ 37 (emphasis added). Plaintiff's use of the plural "Defendants" leaves unclear which entities, precisely, Plaintiff believes was responsible for these alleged deficiencies. Plaintiff does not specifically allege that Trott & Trott prepared the notices of foreclosure, nor does Plaintiff allege that Trott & Trott was responsible for the purported assignment or failure to record. Indeed, it is unclear whether this claim — like the other claims based on the purportedly unrecorded assignment — is even asserted against Trott & Trott; as explained above, Plaintiff's complaint does not specify which counts are asserted against which Defendants, with the exception of the claim for quiet title. Without specificity regarding how Trott & Trott was involved in these purported deficiencies, there is no ground for relief properly asserted against that Defendant.[3]

---

Court need not and does not address Defendant's other arguments on the merits, including that it was acting as adverse counsel.

[3] Tellingly, with respect to the claims of wrongful foreclosure, real parties in interest, and conversion, Plaintiff only responds to Trott & Trott's argument that it cannot be liable for these claims — as well as the claims for fraudulent misrepresentation, innocent misrepresentation, and exemplary damages — because it was acting as opposing counsel. In other words, Plaintiff does not respond to Defendant's alternative arguments addressing the merits of the assignment-based claims; to the contrary, all of Plaintiff's response is targeted to purported issues with the loan modification, not the purportedly unrecorded assignment. This supports the Court's conclusion that no valid claim has been asserted against Trott & Trott based on the allegedly unrecorded assignment.

Furthermore, even if Plaintiff had specified the actions taken by Trott & Trott with respect to the wrongful-foreclosure claim, Plaintiff fails to allege any prejudice resulting from the purported errors. In Kim v. JPMorgan Chase Bank, N.A., 825 N.W.2d 329 (Mich. 2012), the Michigan Supreme Court addressed the prejudice requirement in a case with facts similar to this one. In Kim, the plaintiffs granted a mortgage to Washington Mutual Bank ("WaMu"). After WaMu collapsed, the FDIC transferred WaMu's assets to JPMorgan Chase Bank by way of a purchase agreement. Id. Chase did not record an assignment evidencing the transaction with respect to the plaintiffs' mortgage loan. Nevertheless, Chase foreclosed on the property, and the plaintiffs challenged the foreclosure, arguing, in part, a failure to comply with Mich. Comp. Laws § 600.3204(3). Id.

The Michigan Supreme Court declared that, although the foreclosure violated 600.3204(3), "defects or irregularities in a foreclosure proceeding result in a foreclosure that is voidable, not void ab initio." Id. at 336-337. The court noted that, "to set aside the foreclosure sale, plaintiffs must show that they were prejudiced by defendant's failure to comply with MCL 600.3204. To demonstrate such prejudice, they must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." Id.; see also id. ("[I]n Feldman v. Equitable Trust Co., the Court held that a foreclosure commenced without first recording all assignments of the mortgage is not invalid if the defect does not harm the homeowner. This Court, the Court of Appeals, and the United States District Court for the Eastern District of Michigan have consistently used this interpretation."); Fox v. Jacobs, 286 N.W. 854 (Mich. 1939) (notice defect renders a foreclosure sale voidable, rather than void).

Here, Plaintiff does not explain how he would have been in a better position to preserve his interest in the property absent the noncompliance, i.e., if the purported assignment had been recorded and the notices correct; indeed, Plaintiff "does not challenge Chase or Freddie Mac's right to foreclose," he simply "challenge[s] the method and means leading to the sheriff's sale of his home." Pl. Resp. at 2. Plaintiff has, therefore, not sufficiently pled prejudice resulting from the purported statutory defects.

Accordingly, the Court dismisses the wrongful-foreclosure claim against Defendant Trott & Trott.

**B.     Real Parties in Interest**

Plaintiff also brings a claim for "Real Parties in Interest," asserting that, because "Defendants do not have the legal right to enforce the Original Motes [sic] and Mortgages and will receive no benefit from the foreclosure of Plaintiffs [sic] home, Defendants are not the real parties in interest entitled to foreclose Plaintiffs [sic] homes [sic]." Compl. ¶ 70. He claims that "Defendants are not holders in due course of the original notes or mortgages." Id. at ¶ 67.

As with Plaintiff's claim for wrongful foreclosure, the Court concludes that this claim does not satisfy Rule 8 as applied to Trott & Trott. Other than using broad language encompassing all "Defendants," Plaintiff does not specifically assert that Trott & Trott ever claimed to be a "holder in due course of the original note[] or mortgage[]," nor does Plaintiff expressly state that this claim is brought against Trott & Trott or provide any authority suggesting that Trott & Trott — as foreclosure counsel — would be liable under such a cause of action. Indeed, in seeking dismissal of this claim, Defendant notes that it was "not the party foreclosing nor was [it] attempting to enforce the note or mortgage." Def. Br. at 20-21. Plaintiff does not respond to this argument in his response. To the contrary, Plaintiff alleges in his

8

complaint that "Freddie Mac, as trustee, was the assigned mortgagee and foreclosing party." Compl. ¶ 32. Accordingly, the Court dismisses this claim against Trott & Trott.

### C. Conversion

Plaintiff also asserts a claim for conversion based on the purported unrecorded assignment. Plaintiff alleges that the assignment — in combination with "Defendants . . . seeking to convert Plaintiff's note and instrument through their wrongful foreclosure actions and possession [of] Plaintiff's property to convert it to Freddie Mac's use and possession," Compl. ¶ 76 — constituted "unlawful conversion of Plaintiff's property." Id. at ¶ 77.

Trott & Trott argues that dismissal of this claim is appropriate because "Plaintiff has failed to show how Defendant Trott met any of the requirements [for a conversion claim] and, therefore, the claim fails." Def. Br. at 21. Plaintiff does not respond to this argument — nor does he even mention the claim for conversion — in his response to the motion for summary judgment.

The Court notes that, in general, "[f]ailure to respond is grounds for the Court to deem opposition waived." Design Basics, LLC v. Chelsea Lumber Co., 977 F. Supp. 2d 714, 737 (E.D. Mich. 2013) (citing Scott v. State of Tenn., 878 F. Supp. 2d 382 (Table), 1989 WL 72470, at *2 (6th Cir. July 3, 1989)). Further, the Court agrees that Plaintiff's complaint is deficient with respect to setting forth the facts and elements necessary to sustain a cause of action for conversion. See Fed. R. Civ. P. 8; Iqbal, 556 U.S. at 678.[4] Indeed, Plaintiff does not even specify whether this claim is based on common-law conversion or statutory conversion.[5]

---

[4] Plaintiff's claim for conversion is far from a model of clarity. Plaintiff appears to be suggesting that Freddie Mac is liable for conversion because the purported assignment was not recorded. But Plaintiff fails to explain why a failure to record triggers a claim for conversion where neither the assignee nor assignor challenges the underlying agreed-upon assignment. Cf. Livonia Property Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC, 399 F. App'x 97, 102 (6th Cir. 2010) (holding that a mortgagor who is not a party to an assignment lacks standing

9

Moreover, as with the preceding claims, Plaintiff does not explain how Trott & Trott specifically participated in the alleged conversion, other than broad allegations purportedly encompassing all of the "Defendants."

Accordingly, the Court dismisses this claim against Trott & Trott as deficient.

### D. Fraudulent Misrepresentation

Plaintiff also brings a claim for fraudulent misrepresentation. Although this claim also purports to encompass all "Defendants," the Court finds that it is more targeted at actions purportedly undertaken by Trott & Trott than the previous claims. In particular, Plaintiff alleges that he "had been assured by employees/agents of Defendant Trott & Trott that the foreclosure sale would be suspended while his loan modification application was pending." Compl. ¶ 25. Plaintiff claims that, despite these assurances, the foreclosure sale went forward while his loan modification application was under review. Id. ¶ 26, 40.

Defendant argues that Plaintiff's claim for fraudulent misrepresentation fails to satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b). Def. Br. at 15-17. The Court agrees. Rule 9(b) requires that a complaint alleging fraud "state with particularity the

---

to challenge the assignment absent "a defense [that] renders the assignment absolutely invalid or ineffective, or void").

To the extent Plaintiff claims the foreclosure resulted in a wrongful conversion of possession of the house, courts have repeatedly held that real property is outside the scope of a conversion claim. See Bolone v. Wells Fargo Home Mortg., Inc., 858 F. Supp. 2d 825, 838 (E.D. Mich. 2012); Kama v. Wells Fargo Bank, No. 10-10514, 2010 WL 4386974, at *3 (E.D. Mich. Oct. 29, 2010) ("[C]onversion applies only to personal property, not to real property."); Wiener v. Bankers Trust Co., No. 11-10770, 2012 WL 4088944, at *4 (E.D. Mich. Sept. 17, 2012) (dismissing claim for conversion that was based on alleged "wrongfully asserted possession" because "Michigan law does not recognize a claim for statutory conversion of real property").

[5] Plaintiff's complaint references Mich. Comp. Laws § 600.2912, see Compl. ¶ 76, but that statute discusses civil actions for malpractice. Plaintiff may have intended to refer to Mich. Comp. Laws § 600.2919a, but that is not clear from the face of the complaint or Plaintiff's response to the motion for summary judgment.

10

circumstances constituting fraud." To satisfy the rule, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Frank v. Dana Corp., 547 F.3d 564, 570 (6th Cir. 2008). In other words, "[a]t a minimum, [p]laintiffs must allege the time, place and contents of the misrepresentations upon which they relied." Id.

Plaintiff alleges in a single paragraph of his complaint that he "had been assured by employees/agents of Defendant Trott & Trott that the foreclosure sale would be suspended while his loan modification application was pending." Compl. ¶ 25. This allegation does not describe who made the statement, whether it was in writing or verbal, and/or when it was made.[6]

Such information is particularly important in the instant case, where timing could determine whether Plaintiff reasonably relied on these alleged statements. Under Michigan law, a claim for fraudulent misrepresentation requires that the plaintiff reasonably rely on the purported misrepresentation. See Novak v. Nationwide Mut. Ins. Co., 599 N.W.2d 546, 554 (Mich. Ct. App. 1999). Here, Defendant sent notices warning Plaintiff in capital lettering that the "servicer will continue all foreclosure activity unless and until your loan is either brought

---

[6] To the extent Plaintiff argues Michelle Moore's March 2012 e-mail also supports a claim for fraudulent misrepresentation, the Court rejects this argument. Plaintiff asserts that Ms. Moore e-mailed him in March letting him know that his loan modification request was denied and that Trott & Trott would be moving forward with the foreclosure process. Compl. at ¶ 26; 3/28/12 E-mail (Dkt. 1-1). However, the foreclosure sale had already occurred two months earlier. Sheriff's Deed, Ex. D to Def. Mot. for Summ. J. (Dkt. 10-5).

  Nevertheless, even if this statement was fraudulent rather than a mistake, Plaintiff has failed to raise a genuine issue of material fact regarding how he relied upon it. Plaintiff alleges that he relied on the representations "by not taking action to defend the foreclosure action or seek other loss mitigation remedies to redeem the Subject Property or bring the payments current." Compl. ¶ 44. However, (1) the foreclosure sale had already occurred by the time of this misstatement (so he could not have relied on it in failing to defend), (2) Plaintiff did not take any action to try to stop the foreclosure sale in March after he was misinformed that the sale would be moving forward, and, (3) even when Plaintiff allegedly first learned of the January sale in June (still within the redemption period), there is no evidence that he took any action to redeem the property or bring the payments current.

current or you receive formal written notification that an alternative to foreclosure has been granted," and that "the servicer will continue all foreclosure activity unless and until one of the . . . mentioned alternatives to foreclosure has been completed." See 11/23/11 Correspondence and 11/28/11 Correspondence, Exs. E and F to Def. Mot. for Summ. J. (Dkts. 10-6, 10-7). Therefore, to the extent Plaintiff relied on verbal representations regarding the suspension of the foreclosure sale that were made contemporaneous with or before these written notices were provided, the reasonableness of his continued reliance is questionable. Cf. Nieves v. Bell Indus., Inc., 517 N.W.2d 235, 238 (Mich. Ct. App. 1994) (fraudulent misrepresentation claim cannot stand when a plaintiff has the means to determine that the statement was not true); Miller v. CVS Pharmacy, Inc., 779 F. Supp. 2d 683, 689 (E.D. Mich. 2011) ("[T]he courts have held in a number of cases that a plaintiff's reliance on an oral statement cannot be deemed 'reasonable' if this oral representation is contradicted by a written contract between the parties or otherwise conflict[s] with a written document that is readily available to the plaintiff." (quotation marks and citations omitted)); Titan Ins. Co. v. Hyten, 817 N.W.2d 562, 568 n.4 (Mich. 2012) ("Ignoring information that contradicts a misrepresentation is considerably different than failing to affirmatively and actively investigate a representation."). These considerations illustrate the need for Plaintiff to set forth sufficient allegations to support a claim of reasonable reliance, which his current pleading lacks.

Plaintiff argues that, to satisfy Rule 9(b)'s requirements, additional discovery is necessary. In particular, Plaintiff claims that "[i]t is anticipated that the identity of the individual informing Mr. Boyde that the foreclosure sale would be suspended during the loan modification application process will be discovered during the discovery process and Mr. Boyde would at that time request that the court permit him to amend his complaint." Pl. Resp. at 10. The Court

acknowledges the difficulty Plaintiff may have faced trying to identify some of the information prior to filing the complaint, such as the precise identity of the purported declarant. But Plaintiff fails to explain why some of the other information required under Rule 9(b), such as the timing of the representations and the manner in which they were made, was not within his personal knowledge. Therefore, the Court rejects Plaintiff's argument that he needs additional discovery to the extent it relates to the pleading requirements for which he should have personal knowledge. And, as described, such allegations are necessary to support a claim of fraudulent misrepresentation and, in particular, reasonable reliance in this case.

Therefore, the Court dismisses Plaintiff's claim for fraudulent misrepresentation against Trott & Trott.

### E. Innocent Misrepresentation

In addition to fraudulent misrepresentation, Plaintiff brings a claim for innocent misrepresentation based on the same purported misconduct, i.e., informing Plaintiff that the foreclosure sale would be suspended while the request for loan modification was under review. Compl. ¶¶ 46-49. Defendant responds that this claim must fail because Plaintiff cannot show privity of contract between himself and Trott & Trott. Def. Br. at 18-19.

In addition to the Rule 9 issues addressed above with respect to the fraudulent-misrepresentation claim, the Court agrees that Plaintiff's claim for innocent misrepresentation must fail because it does not set forth two of the essential elements: privity and benefit inuring to the party making the misrepresentation. The Michigan Supreme Court has explained the differences between fraudulent misrepresentation and innocent misrepresentation as follows:

> On the one hand, the innocent misrepresentation rule differs in eliminating the scienter and proof of the intention that the misrepresentation be acted upon. However, on the other hand, the innocent misrepresentation rule adds the requirements that the

> misrepresentation be made in connection with making a contract and the injury suffered by the victim must inure to the benefit of the misrepresenter.

Titan Ins. Co., 817 N.W.2d at 568 n.5. Similarly, "the rule of innocent misrepresentation only applies to parties in privity of contract," because "in situations involving privity of contract, all representations may be presumed to be made for the purpose of inducing the other party to enter the contract." United States Fid. & Guar. Co v. Black, 313 N.W.2d 77, 85 (1981).

Defendant argues that Plaintiff has failed to allege privity of contract between Plaintiff and Trott & Trott. Def. Br. at 17-19. The Court agrees. Plaintiff's mortgage loan agreement was between himself and Defendant JPMorgan Chase. Similarly, any loan modification would have been between himself and either Freddie Mac, the trust, or Chase (the loan servicer). Indeed, the correspondence Trott & Trott sent Plaintiff expressly asked Plaintiff to submit certain documents, which Trott & Trott would then "forward to your servicer who will contact you with a final decision." 11/28/11 Correspondence, Ex. F. to Def. Mot. for Summ. J. (Dkt. 10-7).

Tellingly, Plaintiff does not respond to Defendant's argument regarding privity of contract, nor does Plaintiff's complaint or response explain how he was in privity with Trott & Trott, or, for that matter, mention privity at all. See Fed. R. Civ. P. 8. Therefore, Plaintiff has not satisfied his pleading obligations with respect to bringing a claim for innocent misrepresentation again Trott & Trott. Cf. Riddle v. Lacey & Jones, 351 N.W.2d 916, 919-920 (Mich. Ct. App. 1984) ("Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract."); Kozma v. Chelsea Lumber Co., No. 290713, 2010 WL 2836327, at *5 (Mich. Ct. App. July 20, 2010) (affirming dismissal of claim for innocent misrepresentation against

employees of corporate defendant because the individual agents for defendant did not have privity of contract with the plaintiff).

Furthermore, neither Plaintiff's complaint nor his response to the motion explains how the purported injury he suffered inured to the benefit of Trott & Trott. Therefore, the Court dismisses the innocent-misrepresentation claim against Defendant Trott & Trott.

### F. Exemplary Damages

Lastly, Plaintiff asserts a claim for exemplary damages based on the purported misrepresentations. In particular, Plaintiff claims that "[a]s a direct and proximate result of Defendants' failure to inform Plaintiff that the foreclosure sale would take place while his loan modification application was pending, Plaintiff lost his opportunity to challenge Defendants' foreclosure by advertisement and is in danger of losing his home." Compl. ¶ 54.

Given that the Court dismisses the misrepresentation claims without prejudice, the Court also dismisses the claim for exemplary damages, which is based upon Plaintiff's claims for fraudulent and innocent misrepresentation. The Court also notes, however, that "exemplary damages is not a cause of action; it is a type of remedy." Federal Home Loan Mortg. Corp. v. Matthews-Gains, No. 12-12131, 2013 WL 423777, at *4 (E.D. Mich. Feb. 4, 2013); see also Santander Consumer USA, Inc. v. Superior Pontiac Buick GMC, Inc., No. 10-13181, 2013 WL 27921, at *11-12 (E.D. Mich. Jan. 2, 2013) (dismissing claim for exemplary damages because "exemplary damages are a sanction and not an independent cause of action"). Therefore, dismissal of this claim is appropriate.

### V. CONCLUSION

For the foregoing reasons, the Court dismisses without prejudice Plaintiff's claims against Defendant Trott & Trott. Plaintiff may seek leave to amend his complaint, with the

requisite specificity alleged, within 14 days of the date of this order.[7]  Plaintiff's failure to seek leave to amend will result in the automatic conversion of the dismissal into one with prejudice.

SO ORDERED.

Dated: August 11, 2014  s/Mark A. Goldsmith
Flint, Michigan  MARK A. GOLDSMITH
United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 11, 2014.

s/Deborah J. Goltz
DEBORAH J. GOLTZ
Case Manager

---

[7] The Court warns Plaintiff that it will not be amenable to any proposed amendment that fails to clearly and specifically articulate the factual bases for the elements of each claim, e.g., prejudice arising out of purported statutory defects, who did what with respect to the foreclosure sale, what precisely was represented, when it was represented, whether the representation was verbal or written, how that representation was a misrepresentation, the damages that resulted from the misrepresentation, how precisely Plaintiff reasonably relied on the misrepresentation, the precise harm caused by the misrepresentation, how Trott & Trott benefitted from the misrepresentation, whether privity exists, etc.  Conclusory statements reciting the elements, without any factual support, are insufficient.  See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").